1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

HEATHER LE,

               Plaintiff,

     v.

COMPASS AIRLINES, LLC,

               Defendant.

Case No. CV 20-8296-DMG (JPRx)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter is before the Court following a one-day bench trial that took place on January 4, 2022.  Andrew Owen appeared on behalf of Plaintiff Heather Le.  Michael Terhar appeared on behalf of Defendant Compass Airlines, LLC.

Having carefully reviewed and considered the evidence and the arguments of counsel as presented at trial, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

-1-

I.

FINDINGS OF FACT[1]

**A.      Plaintiff's Burn and Treatment**

1.      On February 11, 2020, Plaintiff Heather Le was a passenger on a flight traveling from Phoenix to Los Angeles.  Heather Le Decl. at ¶ 5 [Doc. # 42].  While on the flight, Le's right arm was burned by hot water spilled by a flight attendant during beverage service.  *Id*.[2]

2.      Le's burn occurred around 4:00 p.m.  Trial Tr. at 22.  Blisters began to form on Le's arm immediately.  Le Decl. at ¶ 5.  Le and the flight attendant attempted to pat the water off with napkins, which caused some of Le's skin to lift off.  *Id*. at ¶ 6.  Le applied ice provided by the flight attendant to the injury, which caused the burn to sting even more.  The flight attendant also applied a cooling gel, which caused a severe burning sensation.  Le washed the gel off after a few minutes.  *Id*. at ¶¶ 6-7.  Le took two Advil, which she had with her, but they did not significantly reduce the pain.  She was in terrible pain for the remainder of the flight.  *Id*. at ¶ 7.  After the flight landed, Le was taken to the emergency room in an ambulance.  Because the emergency room was crowded, Le was not seen by doctors until approximately 8:00 p.m.  Le Decl. at ¶ 9.  A doctor performed a debridement, a procedure by which dead skin is removed from the burn area.  *Id*. at ¶ 10; *see also* Trial Ex. 3 (Medical Records), at 243; Rosenberg Depo. at 23:22-24:2.  The debridement was very painful.  Trial Tr. at 17.  The emergency room doctors applied a dressing and prescribed hydrocodone for pain relief.  Le Decl. at ¶ 10.

3.      On February 13, 2020, Le was treated by Dr. Andrew Vardanian.  Dr. Vardanian holds a B.A. from Stanford University, an M.S. from the University of California, Berkeley, and an M.D. from the University of California, San Francisco.

---

[1] To the extent that any of the Court's findings of fact may be considered conclusions of law or vice versa, they are so deemed.

[2] Defendant has stipulated to liability.  Final Pretrial Conference Order ("FPTCO") at ¶ 5(a) [Doc. # 38].  The facts included in paragraph 1 are therefore provided for background purposes only.

Trial Ex. 8 (Vardanian Curriculum Vitae) at 1.  Dr. Vardanian is an assistant clinical professor of plastic surgery at the University of California, Los Angeles and is board-certified in surgery, surgical critical care, and plastic surgery.  *Id*. at 1-2.  Dr. Vardanian diagnosed Le with a second degree burn and performed a second debridement.  Vardanian Depo. at 14:1-4.  This debridement was also very painful.  Le Decl. at ¶ 13.  Dr. Vardanian applied a dressing to the injury.  *Id*.

4.     Le's husband, Dr. Kyle Cheng, changed Le's dressing approximately every day for approximately one month.  Trial Tr. at 13, 25-26.  Dr. Cheng holds a B.A. from Columbia University, a Master's degree from Georgetown University, and an M.D. from Drexel University College of Medicine.  Cheng Decl. ¶ 3 [Doc. # 43].  He is an assistant clinical professor of dermatology at the University of California, Los Angeles, and is board-certified in dermatology.  *Id*.  Le's first dressing change was excruciating.  Le Decl. at ¶ 11.  Dressing changes involved removing the existing bandages, cleaning the wound, applying ointment, and applying new bandages.  Cheng Decl. at ¶¶ 8-10.  Cleaning the wound and applying ointment also caused Le to experience pain.  Cheng Decl. at ¶¶ 9-10.  After about three to four weeks, the healing wound became severely itchy.  Cheng Decl. at ¶ 12.

5.     For approximately the first four weeks after her injury, Le was limited in her performance of basic activities.  Cheng Decl. at ¶ 11; Le Decl. at ¶¶ 19-20; Trial Tr. at 18-19.  Le is right-handed, and she was unable to use her right arm to type or drive, and required help covering her arm with plastic to shower.  Trial Tr. at 18.  She needed help with cooking, cleaning, eating, and caring for her dog.  Le Decl. at ¶ 19; Cheng Decl. at ¶ 11.  She was still able to work, although she worked remotely for three days after the injury, and to keep up with her school studies.  Trial Tr. at 8-9.

6.     Le used hydrocodone for pain relief for approximately one to two weeks, and an over-the-counter pain medication, naproxen, for an additional one to two weeks.  *Id*. at ¶ 11; *see also* Trial Tr. at 14-15.  Le's complaints of pain are corroborated by

1   photos of the injury during the acute healing phase.  *See* Trial Ex. 4 (photos showing

2   progression of Le's burn).

3        7.      Le's injury made her uncomfortable and self-conscious at the beginning of

4   her recovery.  Being asked questions about the injury made her relive the injury again, so

5   she avoided certain social events.  Le Decl. at ¶ 15.  Le's injury came at the beginning of

6   the COVID-19 pandemic, and was an added stressor during the early stages of the

7   pandemic.  *Id*. at ¶ 20.  Le also has a history of keloid scarring, about which she feels

8   self-conscious, and she worried that her burn would result in these scars.  Le Decl. ¶ 14;

9   Trial Tr. at 9-10; *see also* Vardanian Depo. at 20:7-21:2.

10       8.      Le was also examined by Defendant's retained expert, Dr. Jeffrey L.

11   Rosenberg.  Rosenberg Depo. at 6:23-25, 12:12-16.  Dr. Rosenberg holds a B.A. from the

12   University of Arizona and an M.D. from Chicago Medical School.   Trial Ex. 9

13   (Rosenberg Curriculum Vitae) at 1.  He is an assistant clinical professor of medical

14   education at Keck School of Medicine of the University of Southern California and the

15   Chief of Plastic Surgery at Good Samaritan Hospital in Los Angeles, and he is board-

16   certified in plastic surgery.  *Id*.

17   **B.    Future Pain and Suffering**

18       9.      Le continues to have slight hyperpigmentation, or darkening, of the skin

19   where she was burned.  Le Decl. at ¶ 21; Cheng Decl. at ¶ 15; Trial Tr. at 10-12.  The

20   skin is sensitive to heat and the sun, and feels hot and itchy after exposure to sun or heat.

21   Trial Tr. at 10, Le Decl. at ¶ 21.  Le is able to avoid these effects by using sunscreen,

22   wearing long sleeves, and staying out of the sun.  Trial Tr. at 19; Le Decl. at ¶ 21.  Le

23   does all of these things regularly, and has adjusted her wardrobe around the need to

24   protect her scar.  Trial Tr. at 19-20; Le Decl. at ¶ 21.  The burn did not result in any

25   keloid scars.  Trial Tr. at 8:7-9.

26       10.     The faint hyperpigmentation of Le's skin is most likely permanent.

27   Vardanian Depo. at 40:17-23; Trial Tr. at 27-28 (Cheng Testimony) (believes the

28

hyperpigmentation will be permanent); Rosenberg Depo. at 29:5-11 (a good chance the hyperpigmentation will be permanent).

11.    The sensitivity to heat and sun Le experiences may improve, but are probably permanent.  Vardanian Depo. at 41:23-43:4 (if these conditions have not yet improved, they are "probably going to continue"); Cheng Decl. ¶ 16; Trial Tr. at 27-28 (Cheng Testimony); *but see* Rosenberg Depo. at 16:9-17 (opining "there is a good probability [Le's itching and heat sensitivity] could improve"), 28:21-22 (opining "my experience tells me that these things improve with time"), 29:1-4 (it is "possible" the sensitivity will not improve).

12.    Knowing her arm will never look or feel the way it did before her injury makes Le feel sad and upset.  Le Decl. at ¶ 25.  While she can go about her daily activities normally, she has changed her behavior in small but meaningful ways to account for her injury.  Le will have to continue using sunscreen and covering her arm for many years, if not for the rest of her life.  Vardanian Depo. at 43:5-44:1.  If she knows she will be outside for more than 10 or 15 minutes, she wears extra sunscreen and long sleeves, and tries to find a way to stay in the shade, which she has found impedes her ability to "do normal things outside."  She has changed her wardrobe to wear long sleeves as often as she can.  She continues to feel self-conscious about the injury, and when people have asked her about it, it brings back memories of the pain she experienced. Trial Tr. at 19-20.  She feels limited in her ability to travel, an activity she loves, because of her desire to avoid sunny places.  Trial Tr. at 31 (Cheng Testimony).

13.    The total cost of Le's medical care for treatment of her injuries was $4,913.25.  Le Decl. at ¶ 18.  Defendant agrees that this amount was reasonable.  Trial Tr. at 38.

14.    Le has no plans for future medical treatment.  Trial Tr. at 15.

## II.

## CONCLUSIONS OF LAW

**A.      Liability**

15.      Given that the parties have stipulated as to liability, Defendant is liable for causing Le's injury.

16.      Defendant has abandoned its failure to mitigate defense.  Trial Tr. at 37.

**B.      Damages**

17.      Under California law, "a person injured by another's tortious conduct is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort."  *Hanif v. Hous. Auth.*, 200 Cal. App. 3d 635, 640 (1988).

18.      Le is entitled to recover $4,913.25, the amount she actually paid for her medical care, as economic damages.  *See Williams v. The Pep Boys Manny Moe & Jack of California*, 27 Cal. App. 5th 225, 237 (2018) (citing *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 551 (2011) ("[A]ny reasonable charges for treatment the injured person has paid or, having incurred, still owes the medical provider are recoverable as economic damages.").

19.      In California, a plaintiff who has established liability may recover noneconomic damages for a wide variety of harms, including emotional distress and pain and suffering, which may include not only physical pain but also "fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal."  *Capelouto v. Kaiser Found. Hosps.*, 7 Cal. 3d 889, 892–93 (1972); *see also Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 300 (2017) (noneconomic damages may also include "such items as invasion of a person's bodily integrity (*i.e.*, the fact of the injury itself), disfigurement, disability, impaired enjoyment of life, susceptibility to future harm or injury, and a shortened life expectancy").  The test for determining noneconomic damages "is one of reasonable compensation."  *Hilliard v. A. H. Robins Co.*, 148 Cal. App. 3d 374, 412 (1983).

20.    Le has sustained noneconomic damages of $200,000 for past pain and suffering.    This amount constitutes reasonable compensation for her past pain and suffering.

21.    A plaintiff may recover for future noneconomic damages that are reasonably certain to occur. *Bellman v. San Francisco High Sch. Dist.*, 11 Cal. 2d 576, 588 (1938); *Garcia v. Duro Dyne Corp.*, 156 Cal. App. 4th 92, 97 (2007).

22.    Le will almost certainly have mild hyperpigmentation for the rest of her life, and will most likely continue to experience sensitivity to heat and sun during her lifetime. Likewise, she will most likely have to make small but meaningful lifestyle concessions due to her burn for the rest of her life.   Le has sustained noneconomic damages of $100,000 for future pain and suffering.   This amount constitutes reasonable compensation for her future pain and suffering.

## III.

## CONCLUSION

In light of the foregoing, the Court awards $4,913.25 in medical expenses and $300,000 in noneconomic damages.  The Court will enter Judgment accordingly.

DATED:  April 29, 2022

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE